and if so it may have been a mere error of judgment on his part; but that, I think, would be a question of fact.

I think the jury could have found from the evidence that either the flagman was negligent in not waving his lantern in time to stop the train, or else that the engineer was heedless of the signals given him, and neglected to bring his train to a stop in time to avoid the collision.

The defendant saw fit not to call the engineer or flagman, or give any evidence. It challenged the sufficiency of the evidence, as it had the right to do, after the plaintiff had rested. While the evidence is not very satisfactory, we think it sufficient to take the case to the jury, in the absence of any evidence to the contrary.

The judgment should, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event.

All concurred, except McLᴇɴɴᴀɴ, P. J., and Rᴏʙsᴏɴ, J., who dissented on the ground that the plaintiff failed to establish actionable negligence on the part of the defendant.

Judgment reversed and new trial ordered, with costs to appellant to abide event.

----

Tʜᴇ Pᴇᴏᴘʟᴇ ᴏғ ᴛʜᴇ Sᴛᴀᴛᴇ ᴏғ Nᴇw Yᴏʀᴋ ex rel. Mᴀʀʏ J. Sᴍɪᴛʜ, Appellant, *v.* Cʜᴀʀʟᴇs Mᴏsɪᴇʀ and Others, Constituting the Park Commissioners of the City of Buffalo, Respondents.

Fourth Department, July 6, 1909.

Mandamus — demurrer to writ — municipal corporation — powers of park commissioners, city of Buffalo — highways — obstruction of streets crossing park approach — abandonment — laches.

A demurrer to an alternative writ of mandamus admits the facts stated therein.

Under the charter of the city of Buffalo, as amended in 1901, forbidding new streets to be laid out to intersect a park approach without the consent of the park commissioners, the commissioners may withhold their consent; but they have authority to permit a street to intersect a park approach. Where such consent has been given and an intersecting street has been opened, it becomes a public highway.

Where the original consent to the construction of such street intersecting a park approach was absolute and unconditional, the park commissioners cannot

thereafter withdraw the consent and close the street in any manner other than that provided in the charter, which requires that a written application be made by two-thirds of the number of the owners of land fronting the same, the lineal front of whose land shall constitute two-thirds of the lineal front of all the lands on the street.

The fact that the park commissioners of said city have obstructed an intersecting street for nine years does not constitute an abandonment thereof by abutting owners, even if it be held that the six years' statute applies.

Although said intersecting street has been obstructed by the park commissioners for nine years, a writ of mandamus on the relation of an adjoining landowner to compel the removal of the obstruction will not be denied upon the ground of laches.

WILLIAMS, J., dissented.

APPEAL by the relator, Mary J. Smith, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 17th day of September, 1908, upon the decision of the court, rendered after a trial at the Erie Special Term, dismissing an alternative writ of mandamus.

*Simon Fleischmann* and *Frank F. Williams,* for the appellant.

*Samuel F. Moran* and *Louis E. Desbecker,* for the respondents.

KRUSE, J.:

An alternative writ of mandamus was granted requiring the respondents, the park commissioners of the city of Buffalo, to remove obstructions placed across Oak Grove avenue and Loring avenue at their intersection with Humboldt parkway, or to show cause why the same should not be done. The park commissioners demurred to the writ upon the ground that it did not state facts sufficient to constitute a grievance, or to entitle the relator to such relief. The demurrer was sustained at Special Term, and from that order and judgment the relator appeals.

Humboldt parkway is one of the parkways of the park approaches of the city of Buffalo, and constitutes a part of the system of continuous park lands, park approaches and parkways in said city, of more than seven miles in length, extending through and about the city at varying distances from the city limits, including Front avenue from the Terrace to the Front, Porter avenue, Richmond avenue, and Bidwell parkway from the Front to Delaware park,

Humboldt parkway from Delaware park to Humboldt park, Fillmore avenue from Humboldt park to Seneca street.

It is stated in the writ that there is a large and rapidly growing population in the vicinity of the parkways, and extending for long distances beyond the parkways in all directions; that it is very important to the growth and welfare of the city that the public and persons residing in the vicinity of the parkways should have free and undisturbed access from all parts of the city to all other parts by streets crossing said parkways by short and convenient routes.

That on and prior to November 8, 1899, Humboldt parkway consisted of a greensward eighty-six feet in width, extending through its entire length, with driveways and sidewalks on each side of the greensward, each of said driveways being about thirty-eight feet wide. It appears that the southwesterly and northeasterly boundary line of said Humboldt parkway, at the points where Oak Grove avenue and Loring avenue meet and cross the same and for a considerable distance to the northwest and southeast thereof, constitute the southwesterly and northeasterly bounds of the park lands.

That on or about October 10, 1891, a map or plat was filed in the Erie county clerk's office by the owner of the portions of Oak Grove avenue lying and extending easterly and westerly of Humboldt parkway and Loring avenue from Meech street to the southwesterly line of Humboldt parkway and showing Oak Grove avenue sixty feet wide, extending from Delevan avenue in a northeasterly direction continuously and as a street, about nine hundred feet to and across Humboldt parkway and extending about nine hundred feet beyond said parkway to lands of the New York Central and Hudson River Railroad Company, and showing Loring avenue sixty feet wide extending from Meech street in an easterly and northeasterly direction continuously and as a street across Humboldt parkway and some distance beyond.

That in or about the year 1891 Oak Grove avenue and Loring avenue were opened and graded as streets, sixty feet wide, as laid out on the map, and were thereupon and thereafter used as public highways for travel by pedestrians and vehicles.

That on or about June 5, 1893, a deed of Oak Grove avenue from Delevan avenue to the southwesterly line of Humboldt park-

way and of Loring avenue, extending from Meech street to the southwesterly line of Humboldt parkway, was given to the city of Buffalo by the owner thereof and the deed was accepted by the city as appears by the proceedings of its common council, and that Oak Grove avenue, both east and west of Humboldt parkway and Loring avenue west of Humboldt parkway, were marked upon the official assessors' map of the city in ink as public streets within fifteen years prior to January 1, 1895, and have ever since been and remained so marked on the assessors' maps.

That in or about the year 1891 there was laid out and opened a driveway, with footpaths on each side thereof, said driveways and footpaths being the same width as Oak Grove avenue across Humboldt parkway and at right angles thereto, directly and uninterruptedly and in a continuous straight line connecting that portion of Oak Grove avenue running to and intersecting the southwesterly line of Humboldt parkway with that portion of Oak Grove avenue running to and intersecting the northeasterly line of Humboldt parkway, which continuation and connection was made upon the consent and authority of the park commissioners.

That on or about the 1st day of October, 1895, a communication was presented to the park commissioners from the owners of the premises abutting on both sides of Loring avenue, extending from Humboldt parkway easterly about 1,000 feet, stating that the said owners had sewered and paved Loring avenue, and had made and were engaged in making other improvements (which need not be mentioned), stating further that Loring avenue was so laid out as to connect with Loring avenue west of Humboldt parkway, and asked the park commissioners to open Loring avenue across Humboldt parkway, and that thereupon and on or about October 1, 1895, the park commissioners adopted a resolution granting said request and directing the superintendent of parks to do the work of so opening Loring avenue across Humboldt parkway.

That in or about the month of October, 1895, Loring avenue was so laid out and opened across Humboldt parkway, with a driveway and footpaths each side thereof, connecting that part of Loring avenue on one side of the parkway with that on the other, the same as was done with Oak Grove avenue.

That from the time Oak Grove avenue and Loring avenue were

continued and connected across Humboldt parkway they were left open continuously and uninterruptedly for public use and travel for vehicles and pedestrians, until some time in the year 1899, a resolution having been passed by the park commissioners on or about November 1, 1898, that Loring avenue and Oak Grove avenue be closed between the roadways on the easterly and westerly side of Humboldt parkway.

That thereafter, and in the year 1899, the park commissioners built and erected obstructions, consisting of wooden fences about three feet in height, directly across Oak Grove avenue and Loring avenue, along the easterly line of the westerly driveway of Humboldt parkway, and also along the westerly line of the easterly driveway of Humboldt parkway, which obstructions have ever since remained there and totally obstructed and prevented the use of the roadways and footpaths on each side of the avenues across Humboldt parkway, either by vehicles or pedestrians, and the park commissioners have refused to remove the obstructions.

It appears from other statements contained in the writ what efforts have been made by persons interested, including the relator, who resides upon certain premises located on the corner of Loring avenue and Humboldt parkway, to remove the obstructions, and how the relator is injured thereby; and that no application has ever been made by the owners of lands on Oak Grove or Loring avenues to discontinue the same or any part thereof; and the necessity for keeping the said avenues open across said parkway, and the reason for closing the same; the reason for closing the same, briefly stated, being to furnish a speedway for fast driving in Humboldt parkway, from Kensington avenue to Delevan avenue, a distance of about half a mile.

The speedway has been made and used exclusively for that purpose, and horses driven at so high a rate of speed as would make it dangerous for persons to cross the parkway at these points.

The defendants, the park commissioners, by their demurrer admit the facts stated in the writ, but challenge the right of the relator to require them to remove the obstructions placed across Loring avenue and Oak Grove avenue, where they intersect Humboldt parkway, their contention in that behalf, as I understand it, being that no legal highway was ever effected across the parkway at these

points, and that in any event the park commissioners may at any time withdraw the consent heretofore given by their predecessors in office, and acted upon in opening said avenues across said parkway, and may close the avenues where they cross the parkway at any time when, in their judgment, it is deemed advisable to do so.

By the Park Act (Laws of 1869, chap. 165), under which the board of park commissioners was originally organized, the board was given full and exclusive power to govern, maintain and direct, and lay out and regulate parks and approaches thereto, and the streets connecting the same, possessing all the power and authority of the common council of the city respecting public squares and places in the city; and this power and authority the park commissioners have ever since continued to exercise. The act provided for acquiring lands for parks and approaches thereto by condemnation proceedings, and it was provided by the 11th section of the act that "the said lands shall vest forever in the city of Buffalo, for the uses and purposes in this act mentioned, and the said park commissioners shall be entitled to enter upon, take possession of, and forever use the said land for the purposes of a park or parks, approaches thereto, and streets connecting the same;" and by the 4th section of the act it was provided: "And the parts of all streets, avenues and highways now laid out as running through said pieces of land, are hereby closed and discontinued so far as the same would run through or intersect said pieces of land."

In 1885 the charter of the city of Buffalo was amended (Laws of 1885, chap. 181, amdg. Laws of 1870, chap. 519), and certain sections were included therein relating to parks. The power of the park commissioners after this amendment of the city charter was passed upon by the Court of Appeals in the case of *Bork* v. *City of Buffalo* (127 N. Y. 64), which involved the validity of a contract for paving one of the parkways of the city, made by the park commissioners, and it was there held that the park commission was an independent department of the city government, with power to locate parks, lay out approaches thereto, and appropriate and condemn lands for those purposes, and to maintain parks and approaches for the benefit of the city, independently and without the consent or approval of any other body or officer; and that the said addition and amendment to the city charter in 1885 continued the park com-

mission as such independent officers, retaining such exclusive power over the parks and approaches thereto.

It should be further noted that in the original act passed in 1869, in defining the general powers of the park commissioners regarding the parks, approaches and streets connecting the same, it was provided that they should have all the power and authority possessed by the common council of the city in respect to the public squares and places in said city (Laws of 1869, chap. 165, § 21); while by the addition and amendment to the charter in 1885, it was provided that the park commissioners should have all the power and authority then possessed by the common council in respect to the public *streets, sidewalks,* squares and places in said city (Laws of 1870, chap. 519, tit. 9, § 23, added by Laws of 1885, chap. 181, § 22), interpolating the words "streets" and "sidewalks."

The added section 23 was carried into the revision of the city charter passed March 27, 1891 (Laws of 1891, chap. 105, § 310), and is a substantial re-enactment as regards the provisions now under consideration, except that it is therein specifically provided that "no new street shall be laid out to intersect any park approach, without the consent of the park commissioners" (Laws of 1891, chap. 105, § 310), and continues the former provision that the approaches shall be deemed to include all lands within the boundaries thereof, and such portions as may be within the boundaries of intersecting streets, but giving the common council jurisdiction of the intersecting streets up to the curb line of the approach.

Section 391 of the revised city charter provides: "The city may lay out, enlarge and alter parks, public grounds, squares, streets, alleys, canals, basins, slips or other public waters, and cause them to be surveyed, described and recorded in a book to be kept by the city clerk." (Laws of 1891, chap. 105, § 391.)

It is not claimed that Oak Grove avenue and Loring avenue are not public streets, except where they cross Humboldt parkway. It is, however, contended by counsel for the respondents that neither the park commissioners nor any other city official had the right to lay out or make a street, by dedication or otherwise, across the park approach. As regards the amendment of 1891, forbidding a new street to be laid out to intersect a park approach without the consent of the park commissioners, he contends that the amendment

means that the common council may not lay out a street which will lead up to a parkway and from which traffic shall pass to the parkway without the consent of the park commissioners, but that the park commissioners have no power to lay out a street across the parkway.

I have no doubt the park commissioners could so limit their consent, but I think their power is not thus limited by the act. I think it includes authority to permit a street to cross over as well, and that under the facts and circumstances of this case the avenues in question became public highways at their intersection with Humboldt parkway.

If I am right in that regard there remains but the single question as to whether the park commissioners may at will withdraw their former consent which was absolute and unconditional and unlimited as to time and close the avenues at their intersection with the parkway to the detriment of a property owner such as the relator. Section 394 of the city charter reads as follows: " The city may discontinue or contract a street or alley, or any part of it, upon the written application of two-thirds in number of the owners of the lands fronting on the street or alley, the lineal front of whose lands shall constitute two-thirds of the lineal front of all the lands on the street or alley. A continuous street or alley, portions of which bear different names, is to be considered as a single street or alley." (Laws of 1891, chap. 105, § 394.)

The late Justice CHILDS had this question before him in the case of *Holtz* v. *Diehl* (26 Misc. Rep. 224), and he reached the conclusion there that the park commissioners have no authority to close any portion of any regularly laid and open city street by resolution or in any other manner than that provided in the charter. That conclusion commends itself to my judgment. Some of the most important streets of the city intersect these parkways and have been maintained there for years. If the park commissioners can close these two avenues I do not see why they may not close all streets where they cross parkways. While the park commissioners have the control and may regulate the use of intersecting streets where they cross the parkways it does not seem reasonable that after having consented, as was done in this case, they may summarily and at will discontinue and terminate their existence as public thorough-

fares across the parkway. It seems to me that the purpose of the amendment of 1891 was to permit streets to be laid across the park approaches with the consent of the park commissioners. It is also to be observed, in this connection, that this permission does not extend to the parks or park lands ; it is carefully limited to park approaches.

The point is also made by respondents' counsel that the streets have been closed at these intersections so long as to constitute an abandonment. I do not think it can be so held even if the six-year statute applies.

Neither do I think the point well taken that the relator is not entitled to the writ because of laches. By their demurrer the defendants concede the facts as stated in the writ, and I think we would not be warranted in sustaining the demurrer for that reason.

The interlocutory judgment sustaining the demurrer should, therefore, be reversed, with costs, with leave to the defendants to plead over upon the usual terms.

All concurred, except WILLIAMS, J., who dissented.

Interlocutory judgment reversed, with costs, and demurrer overruled, with costs, with leave to defendants to plead over within twenty days upon payment of the costs of the demurrer and of this appeal.